Happy to move to our third case of the day 22-1 9 2 7 Thane versus Crouch Council we're happy to hear from you Thank you your honor and may it please the court My name is Caleb David and I represent the appellants defendants below who are state officials that oversee West Virginia's Medicaid Program as well as the state agency that administers that program West Virginia Medicaid provides health insurance coverage for individuals in low-income households as well as for individuals whose medical conditions render them effectively needy the goal of West Virginia Medicaid like all health plans is to provide the most benefit to the largest number of people With their limited resources and Medicaid provides those services Equally to all of its beneficiaries There is no service that is covered for a cisgender person that is not covered for a transgender person meeting the same criteria The plaintiffs in this case have not been denied any services on the basis of a transgender identity Shantae Anderson receives gender-confirming hormones through Medicaid Medicaid pays for her office visits related to those hormones and Medicaid pays also for her lab work her psychological and psychiatric care related to gender dysphoria Christopher Fane also receives gender-confirming hormones Medicaid pays for those as well as for his office visits related to receiving those hormones Both miss Anderson and mr. Fane testified that they have never been denied coverage for any service on the basis of their transgender identities This case is solely about Whether West Virginia Medicaid runs afoul of the Equal Protection Clause The Affordable Care Act and the Medicaid Act because it does not provide insurance coverage for gender-affirming surgeries It does not violate any of those constitutional or statutory provisions The Supreme Court in Alexander versus Choate held that Medicaid programs do not guarantee That each recipient will receive that level of health care precisely tailored to his or her medical needs Instead the benefit of Medicaid is the individual services that are provided and that basket of services that Medicaid provides is Provided to every single beneficiary equally. Okay, can I ask you a question that? It is the simplest question I could think about about factually on the ground about this So does the Medicaid pay for hysterectomies? Yes, your honor and Transgender people wishing to have hysterectomies. Yes, your honor West Virginia Medicaid has provided a hysterectomy coverage for hysterectomy to Christopher Fane The plaintiff in this case received a hysterectomy for something that was not related to gender dysphoria No, no, if you have gender dysphoria And you want a hysterectomy for that, it's been diagnosed Will Medicaid pay for a hysterectomy? For the treatment of gender dysphoria solely? No, your honor. That is what the case is about. But that seems to me to be a procedure that is Provided to cis People, right? Yes, your honor, and it's also. And I thought you told me that all the procedures that were Approved for one were approved for the other. Yes, your honor, and they are. But they're not. You just told me they weren't provided to To transgender people to cure. So you're now looking at the effect, but not the procedure. The procedure is the same Your honor, the facts of the case are that the procedures are not the same. They're not the same Yes, and if they are the same if medical Studies said that they were the same. Oh well for a different purpose You would you would provide it to transgender people, is that correct? No, your honor Then it doesn't make any difference to you whether they're the same or not, right? It does under certain circumstances and certain claims that are raised but not under the equal protection argument Correct. And your honor, under the equal protection argument The what we provide and the ruling of Godaldig is that you have to provide equal services to people similarly Situated and in this instance Christopher Fain had a hysterectomy for something that's unrelated to gender Transgender person you think is not similarly situated to the CIS person. Is that correct? Yes, your honor because They have to meet the same medical criteria. So and this isn't for mr. Fain and For reasons of confidentiality. I am NOT going to say what the reasons were for that. Mr Fain received a hysterectomy but for instance The Medicaid plan provides for hysterectomy to treat endometrial cancer. Well, they they have the same Current procedural terminology code The the same CPT code. Yes in certain circumstances the the CPT codes are the same. Yes, your honor. The easy Example I'm giving you so that's the that's a certain circumstance. We're talking about Yes, your honor the same CPT code would apply for billing purpose and they're industry-wide used by health care providers Yes, your honor insurers We should ignore that then no your honor the The analysis is whether or not someone who's meeting the same criteria Is not going to be provided that on the basis of their transgender identity No, but doesn't CPT code tell us about whether you meet the same criteria? No, your honor That's a billing service There are different guidelines that the the parties have both put in that are in the joint appendix that we call interqual Guidelines and interqual is a nationally recognized company that provides coverage guidelines for certain procedures and in this instance They have a separate set of guidelines for gender affirmation surgeries like those that are at issue here than they do for Hysterectomy for instance for oncological care Those are separate guidelines and there are separate criteria that the individuals have to meet to qualify under those guidelines So I just want to be sure I understand what you're saying so is there a Policy that I can look to that says the transsexual surgery is excluded Yes, your honor. It's under the the list of non-covered services. So how can that not be discriminatory? Under this court's precedence about the rights of transsexual folks. Yes, your honor. So under Gdaldig the analysis is looking at whether or not there are bright lines that are saying that In Gdaldig it was pregnancy. There was a disability insurance program in California that Excluded coverage for disabilities related to pregnancy and of course that only affects women and the court said When you look at it, and you actually look at the analysis on one side you have Women who are pregnant on the other side you have all other persons and that includes both women who are not pregnant and men and because there are members of the class on either side of that line and because the actuarial benefits of the program not covering disability benefits for pregnancy accrue to all of the members of the of the program Equally then that's not a gender-based or a sex-based classification and we have the same situation here and it's important to understand that there is a distinction between someone having a transgender identity and someone having gender dysphoria and everyone agrees that in the in this case and it's an Undisputed in the record that being transgender or having another distinction between someone who has just gender dysphoria and someone who wishes to have What West Virginia terms transsexual surgery, yes, your honor So they're there the testimony in the record is that one in every 200? Individuals has a transgender identity But one in one thousand are in clinical care for gender dysphoria and an even smaller number That's undefined but a smaller a fraction of those one in one thousand are seeking gender affirming surgeries So the the applying the the holding and Godal digger You can't you have to look at the class the class in this instance is transgender individuals in So, I'm sorry I guess I'm not following if this person was both a transgender person and had gender dysphoria. There would be a different result here No, your honor They're the only individuals who are seeking these services. I'm not talking about this case I'm talking about another case when the person has is both transgender and has gender dysphoria or once transgender surgery and has gender dysphoria That that is not this case, right? That is this case your honor. The plaintiffs are both transgender individuals They have testified there's evidence in the record that they have gender dysphoria and they are seeking Surgery to treat their gender dysphoria. So they so what was your what was what was different in my colleagues? Hypothetical to you the your honor the the analysis under the Equal Protection Clause as the court Held as a Supreme Court held in Godal dig and recently reaffirmed in DOPS is that you can't add on to a class You can't append on to a class once you do that, then it's no longer discrimination against a class and in Bray versus Alexandria Women's Health Center The Supreme Court looked at abortion and they specifically said women who are seeking abortion are not a class Women are a class but women who are seeking abortion are not a class and in this instance transgender individuals are a class But transgender individuals who have gender dysphoria and who are seeking gender-affirming surgeries is not a class that's not a sex-based classification and so rational basis review applies and The Supreme Court has held in good Eldig and in other cases that the actuarial Benefits and those cost analyses are sufficient to survive rational basis review when looking at these Benefits programs like the disability program in good all dig and the Medicaid program here in this case and your honor the The Issue on excuse me on Equal protection grants doesn't simply end at that argument The plaintiffs can also prove that they are that this is a proxy that there is invidious Discrimination that's occurring here and that transsexual surgery is simply a proxy for the actual invidious discrimination the discriminator Discriminatory motive of the Medicaid program to target transgender individuals We moved for summary judgment on this issue because there's simply no evidence in the case to suggest that First as I stated at the beginning, West Virginia Medicaid does provide Coverage for gender confirming care up to but not including Transsexual surgery as it's termed or now it's called gender-affirming surgery and Because we provide psychiatric diagnostic evaluation psychotherapy psychological evaluation counseling office visits hormones and lab work there is no evidence that there's invidious discrimination here and Specifically the testimony in the record from the Medicaid programs 30 be one of the Medicaid programs 30 be 7 represent or 30 be 6 representatives was that they decided in 2017 to cover hormone therapy and psychological counseling for individuals suffering from gender dysphoria specifically because they had heard stories about Individuals being distraught that they could not receive hormone therapy when they were on when they were experiencing gender dysphoria That came from a place of trying to help those individuals and unfortunately West Virginia Medicaid cannot provide Coverage for everyone tailored to their specific needs as the court Found in Alexander versus Choate. It doesn't have to be tailored to their specific needs and unfortunately, the reality of the situation is is that there are limited resources and someone may have an issue and West Virginia Medicaid cannot provide coverage for everyone to have what the what the court called adequate health care The the actual benefits or the basket of services that are being provided to those individuals And the Supreme Court held in Dandridge versus Williams reaffirmed in Godal dig that the equal protection clause does not require a state to choose between attacking every aspect of a problem or not attacking the problem at all and the Supreme Court has also held in Williamson versus Lee optical and in Jefferson versus Hackney that A state may take one step at a time Addressing itself to the phase of the problem, which seems most acute to the legislative mind The legislature may select one phase of one field and apply a remedy there neglecting the others That's exactly what West Virginia Medicaid has done in this situation They have provided care for certain aspects of gender dysphoria They have not provided care for gender affirming surgeries and they are permitted to do that under the equal protection clause They're also permitted to do that under the Affordable Care Act The analysis is essentially the same under the Affordable Care Act You cannot discriminate on the basis of sex for the same reasons under Godal dig that this isn't a sex-based classification for equal protection purposes it's also not a sex-based classification for purposes of the Affordable Care Act and Lastly on the Medicaid Act. There's nothing in the Medicaid Act that Specifically requires any program to provide these services and in fact since 2004 which is the earliest point in time that we can find West Virginia Medicaid policy that specifically lists among other non-covered services transsexual services So for the last 20 years CMS has annually approved the Medicaid plan that West Virginia has put before it and for those reasons It also doesn't discriminate or doesn't violate the Medicaid Act my time is up Can I ask just one question for you? You you have not argued that that there's no cause of action under the Medicaid Act. Have you? We have not taken that position your honor Thank you, we'll hear from you again in a few minutes I Also have to hear from you Thank you. May it please the court Tara Borelli with lambda legal on behalf of the plaintiffs a police I want to return to something that my colleague said a moment ago the testimony of a witness in the case who said We learned that transgender people who were being denied hormones were distraught Over that denial and so we decided to provide that care It's medically necessary along with all the other care that they provide for transgender people And so this is a story of kindness and compassion. That was his testimony and he was asked at deposition Why doesn't that kindness and compassion extend to surgery and he said I don't know I don't know the answer to that and that's the story of this exclusion. It's a government classification in search of a justification They don't know when they adopted this exclusion, they don't know why they adopted this exclusion they've performed zero research or analysis about it since that time and they stipulated that nobody who either adopted or who maintained the Exclusion has ever conducted any research or revisited it or considered a scrap of paper. I Want to turn to a couple of points that my colleague raised With respect to the fact that Medicaid covers a range of other services office visits lab work hormones for example That just points to the arbitrariness of the blanket and categorical ban on surgery and I want to be very I Want to make sure because that there's a little confusion in your briefing as to what you keep referring to the exclusion But I want to understand what you say it is So you describe it on page three of your brief as an express exclusion of surgery for transsexual people And I know transsexuals in quotes, but we're going to use the language that West Virginia's used I mean no disrespect in using that over transgender, but as you do for transgender people facing Facially discriminates right? That's that's the argument and what I'm having a little trouble with is here and elsewhere in the brief You suggest that there's an exclusion of surgery for transsexual people But when I look at the policy It doesn't apply to transsexual people right transsexual is an adjective that describes the type of surgery Right not the people for whom it applies Right, and so I just want to make sure I understand you're not arguing or claiming that This is a ban on all surgery for transsexual people Which is what it says exclude surgery for transsexual people is how you describe it, but that's not accurate, right? So I appreciate the chance to clarify so the the ban I think the wording of the band exclusion is very important because it doesn't name a single procedure But it names the group targeted and singled out for discrimination so one piece of why that's what I'm having a little hard time Understand that because it's you say it is a exclusion of surgery for transsexual people But presumably if a transsexual person has a heart problem. They can have open heart surgery, right? Yes, if a trans person has any other problem that requires surgery they can have that surgery just like Thane did here yes, so to be clear when we talk first about what it says And what and then what it means what the exclusion says is no coverage for quote Transsexual surgery that doesn't actually name a single procedure it That adjective transsexual is describing surgery not a group of people it describes the person It doesn't mean a single surgery. I think your argument turns on this so I want to be sure I understand it, right So how when I read the word transsexual surgery? Do I interpret the word? Transsexual as anything other than an adjective Describing the noun that follows it surgery because a few reasons first of all the surgery is the same And so this when it's the same as what the same is that they're being transsexual No, the same as the care provided to cisgender people so a hysterectomy and oophorectomy Vaginoplasty the unrebutted testimony question of why the adjective I'm really asking like a linguistic question right it to ban on transsexual service or transsexual surgery You want to read the word transsexual as an adjective describing person or perhaps to describe it as a noun right? But the words are transsexual services the transsexual is an adjective describing the noun surgery It is a type of surgery whatever that type is matters not for this point right, but do it You understand why I'm saying you keep saying it's about transsexual people But the ban has not doesn't say transsexual people it says transsexual surgery, which is a type of surgery so Let me be clear the other piece of the ban refers to sex change surgery that might be another way of Understanding what this exclusion does it doesn't exclude type of surgery right? No, the the testimony in the record by dr. Schecter the only surgeon to testify is that every surgery that a transgender person seeks is the same as a surgery that a Cisgender person seeks the surgeries are the same defendants left that testimony completely unrebutted This is a an expert surgeon who's performed hundreds of gender-affirming surgeries the hysterectomy is the same The vaginoplasty is the same all the surgeries are the same what this exclusion does is says this group of people Transsexual people you are the people who cannot get that surgery if you need it for gender-affirming care If cisgender people require for other reasons they can have it But if you need it for gender-affirming care you cannot have the surgery and this court has spoken to that ask about that I don't want to take us too far afield from the linguistic question, but I thought We have to look at the policy as a whole right so we have as you mentioned we have the What they call transsexual surgery, there's sex change is referred to West Virginia says we don't we don't cover any Surgery that's The diagnosis is a what they call a psyche psychiatric condition, so they say if it's a DSM V diagnosis Then we don't cover surgery for that. We don't cover physical surgery for diagnosed Mental conditions, and I understand you disagree with that categorization, but I had a question about your expert Dr.. Olson Kennedy and Dr.. Olson Kennedy testified that Cisgender people Can also sometimes feel as though their body doesn't conform to their expectations for their gender and Dr.. Olson Kennedy testified that if a cisgender woman had hypomastia That dr. Olson Kennedy would refer that person for surgery for breast augmentation if it caused the cisgender woman distress significant distress and West Virginia's answer is we wouldn't cover that It's not because she's cisgender It's not because she's not transgender. We don't cover that surgery for that diagnosis so How does that evidence? Support from your from your expert support the conclusion that these are we're talking about the people Rather than the procedure and the diagnosis So I think I hear at least two questions Let me take them in turn the first one is in terms of their argument that they don't cover diagnoses in the DSM The unrebutted testimony in the and the record is also that gender dysphoria Also consists of a medical condition It is widely and so that you know as I said I know I know that you you categorize it Not just as a DSM But also a medical condition and that that might dispute how Westford you might think West Virginia misunderstands, right? They misunderstand the condition, but I'm just trying to understand the classification that they're drawing right for equal protection purposes, correct and an additional Important piece of evidence in the record are the interpol guidelines So these are the guidelines for medical necessity that the West Virginia Medicaid program uses their own medical necessity Guidelines and those guidelines recognize that treatment for gender dysphoria including surgical treatment is medically necessary The only thing that bars those guidelines from being used to provide medically necessary care that's goes to whether you know whether they have a Rational basis or whether they satisfy strict scrutiny, but my question is just about the classification if West Virginia says we don't cover this surgery Based on what we consider a psychiatric diagnosis for anyone How how do I reconcile that evidence with your? Theory that they are drawing a classification based on a person's Transgender identity. Here's a next important piece I want to make sure I've mentioned on the face of any inter just a little louder. Yes, your honor. I apologize. Oh I apologize your honor. Thank you. Y'all have sometimes trouble hearing Understood so in the interpol policy if you look at the face of every single policy it contains ICD codes These are international classification of diseases codes promulgated by the World Health Organization again a classification system for diseases That's what interpol relies on Gender dysphoria is in that listing as a disease under the rubric of gender incongruence By every metric that this program uses to measure what is a medical condition gender dysphoria satisfies that that metric You're just going back again to disputing you think West Virginia Misunderstands the diagnosis right and if they understood it properly they would cover this But that doesn't answer my question about how does this prove they're drawing a classification based on a person's sexual identity Rather than based on the surgery and the diagnosis Because the surgery is the same So for example Christopher Fang required a hysterectomy it was performed to treat a different condition But if he needed that for treatment for gender dysphoria would be absolutely barred and this court That's my point if the procedure it may be the same now They dispute that but it would be the same for a cisgender woman who has hypomastia, and it causes her severe distress And she wants surgery But West Virginia says we won't cover that we don't care if you're cisgender. We don't cover that for that diagnosis Right so a cisgender woman is never going to be diagnosed with gender dysphoria And and this was not disputed anywhere on the record only transgender people have gender your doctor dr. Olson Kennedy whose testimony I'm talking about here, and I'll let you go and move on to other things It just I thought this was a real sticking point for for your argument that Appears multiple times in your brief that we can equate the surgery with the identity because this only ever comes up for this Person and but your expert said that's not the case that she would recommend surgery in the other context So she did not testify to my recollection at all that that would be for gender dysphoria There are a range of surgeries that a person might want or might need Though they can be cosmetic what this case is about is only care for gender dysphoria And this court has already recognized the close relationship that only transgender people are Diagnosed with gender dysphoria and the court said in Williams versus Kincaid as a matter of constitutional avoidance if a law excluded gender dysphoria from its protection We would have little trouble concluding that that discriminates against transgender people as a class and again one only needs to look at the face of the exclusion itself Transgender just people who suffer from gender dysphoria and want surgery you agree That's a much smaller percentage of the protected class So those are all transgender people And there's no requirement under equal protection that every single member of a class be affected in order for there to be an invidious Distinction that's rice versus Caetano Nyquist versus Mowclay and this court's own decision in the Peltier case Where not all parents and not all students objected to the requirement that female students wear skirts and the court said some parents can't nullify The constitutional rights of others so there's never been a requirement that every person every member of a group be affected But here only transgender people are affected and for those who are Medicaid participants they face an absolute categorical bar on this care Let's see I also want to just Jump a little bit to the good old egg point This case doesn't resemble good old egg this exclusion is completely different from good old egg It might be the same if the plan said no one receives coverage for a hysterectomy That was what happened to good old egg nobody received benefits for pregnancy Disability benefits for pregnancy and that mattered to the court the court said there's no risk from which men are protected and women are not Or from which women are protected and men are not there was no differential treatment here There's clear unrebutted differential treatment at JA 304. There's a long list of surgical procedures Those are the very same surgeries that transsexual people require to cover to treat gender dysphoria And they're absolutely denied under this exclusion, so there's a clear demarcation and difference from good old egg There was no differential treatment there here the differential treatment is undisputed additionally Slightly different question and and that's sort of to go a little bit to sort of the Bostock analysis of sort of but for cause and so help me understand if if Thane was a Transgender, but I'll use male the analysis works. I think with the same with transgender, but if Thane was a biological male Then West Virginia would not provide coverage for a mastectomy right Sorry meaning he's he's a cisgender man if I only change that fact right so he's they don't cover that They cover it for gynecomastia So if system, but I'm gonna only change one thing right so the point of Bostock Right as you change one thing and the only thing I change about Thane is that?  Maleness right, but otherwise everything else remains the same no additional diseases or cancers or anything else But the only thing I change is biological sex from female to male In that scenario West Virginia would not give Thane Mastectomy not true Your honor it's a perfect example because if mr. Fane sex assigned at birth were male, and he had excess chest tissue Which generally is diagnosed as gynecomastia West Virginia would cover that yeah, okay, totally fair And it has to be symptomatic raised there though the key phrase you just added was a different condition Right so if he had Gynecomastia, I don't know what that is, but I'll assume. That's a different condition right if he had Cancer if he had something else, that's fine, but then you're changing two facts Not one you understand what I'm saying. I do understand what you're saying This is the Bostock analysis right Bostock tells us you change only one thing Not two things right you don't get to change their their sex or gender and their you know Sexual preferences right you just change one thing right yes gender now sis and Doesn't get the mastectomy he does if if he has access there would be a diagnosis for that If what if he has a different diagnosis if he is a male with excess chest tissue And everybody has to have a diagnosis to get treatment, so that's the same That's the same if he's a male with a diagnosis changes in your hypothetical the diagnosis has changed Right, but if you look at the diagnosis here So this can be analyzed as a matter of discriminates based on sex assigned at birth discriminates based on diagnosis Discriminates based on both or you can look at either in isolation. They all point to sex and transgender status discrimination Williams versus Kincaid recognizes that gender dysphoria Discriminates against transgender people as a class that's the the language of that decision and the exclusion here Also is about sex change surgery and that on its face says We disapprove of this sex based purpose if you're doing something that doesn't align with your your sex assigned at birth We disapprove. We will not cover it that is sex discrimination Thank you counsel. Thank your colleague has a Few minutes yes, thank you very much. Thank you Hey, please the court My name is Anna Prakash, and I represent Christopher Fain Shantae Anderson and the certified rule 23 class The district court did not abuse its discretion in finding numerosity here and that's because the court recognized that what this case seeks is not a Declaration that all transgender folks on Medicaid are automatically entitled to surgery Rather the district court recognized that this case is about lifting the bar that prevents transgender Medicaid participants from even being Considered for a surgery as the district court explained and this is I believe in the summary judgment opinion talking about standing the state has constructed a barrier a discriminatory barrier between every trans person and Health insurance coverage for the surgical care that you all have been talking about this morning so because of that the existence of the 686 folks that the parties have gone back and forth in their briefs about because of that their existence proves Numerosity because each and every one of those folks is a transgender Medicaid Participant and even just a fraction of those if even just a fraction of those folks were to seek Surgery we would be at this 40 person numerical threshold that the Fourth Circuit has adopted Now the state goes on about ascertain ability ascertain ability in the context of the rule 23 b2 class is not technically required this circuit has acknowledged in the thorn case that we're talking about a class that is purely for injunctive relief and that it is different than a rule 23 b3 Class where notice is required and the opportunity to opt out is given that is not this case This case is about injunctive relief on behalf of every single Person and for those reasons unless the court has further questions. I will rest on our briefs and and ask that you affirm Thank You counsel counsel we're happy to hear from you Thank You your honor, and I'd like to start back at that linguistic question that you had transsexual surgery is Simply a description of a group of procedures the same way that gender affirming surgery is a description of a group of procedures It's not you don't say I need gender affirming surgery. It's not specific enough I need a mastectomy to treat my gender dysphoria. That is a specific procedure It's not describing an individual. It's describing a group of procedures and actually dr. Schecter the plaintiff's expert testified that gender confirming surgeries are typically a constellation of procedures That include top surgery genital surgeries and also potentially hysterectomy oophorectomy orchiectomy and I also want to touch on the point that these these are not the same procedures and again. They are Under different criteria you must meet different medical criteria and different guidelines to qualify for these procedures But dr. Schecter Described in his deposition what's involved in vaginoplasty for a gender? affirming surgery and that includes removal of the penis and testicles Followed by use of tissue from the penis to construct a vaginal canal labia and clitoris Those are not the same That's not the same surgery as one that is done for someone who has a congenital absent absence of a vagina Because there's no penis there are no testicles That's not something that's being removed and healthy tissue being extracted from someone's body and being used for a different purpose Those are different procedures now I also want to touch on this issue of medical necessity and There is testimony in the record from our own expert who disputes the medical necessity of these surgeries however Medicaid is not required to cover all medically necessary care and doesn't cover all medically necessary care for instance Tempo mandibular joint disease TMJ issues with the jaw That's a medically necessary surgery and that is a surgery that Medicaid does not cover We specifically have an among that list of non covered services that includes transsexual surgery. We also have TMJ We also do not cover inpatient psychiatric services for individuals between the ages of 22 and 65 There's no question that some people may need inpatient psychiatric services between those ages But we do not provide those services because of cost and it's the same issue here There was a statement that that the a 30 B representative was asked about why we determined that we were going to start covering hormone therapy and counseling and that it was done because there were Individuals who were distraught and it did come from a place of caring and trying to help them that there's a different person who answered the question of why and that person explained that in 2024 West Virginia Medicaid will have a 128 million dollar deficit if that is not cured by the legislature in 2025 they will have a 256 million dollar deficit and that's going to continue to grow unless the legislature provides funds We don't know if the legislature will will provide funds We have requested funds for other care in the past and been denied last legislative session We were denied twice in asking for modest increases in our in our appropriations We can't guarantee that those services will be there so we would have to make decisions as to what we're going to cut because there are a set of required services that Medicaid has To cover and then there are optional services This would be an optional service and Medicaid would have to determine what the proper mix of amount scope and duration limitations are for other services, so they would have to reduce the benefits and that is the the Actuarial issue that we're talking about and what good all dig makes so important. I also want to Touch on this issue that there is this invidious discrimination because of the words transsexual appear in there West Virginia Medicaid does not track gender identity. They they have no way of knowing whether someone is Transgender or not. It's not something that they look at. It's not something that they track their system doesn't designate it So there is nothing that is covered for a cisgender person. That's not covered for a transgender person in case in point is mr. Fane's Hysterectomy that he received he received that because it wasn't for gender dysphoria and we can see that if it was for gender dysphoria He wouldn't have received it But that is the one thing that actually changes this is the diagnosis and what the treatment was for it does not matter that he's Transgender just like it doesn't matter if someone is cisgender Just like it doesn't matter if someone is a man or a woman for all those reasons I see that I'm out of time and I I asked that the court reverse Thank You counsel as you heard we get to come down and greet you again, we'll do just that
judges: Julius N. Richardson, Allison J. Rushing, Diana Gribbon Motz